Hon. HOMER E. ROYCE,
Hon. JONATHAN ROSS, } Assistant Judges.
Hon. H. HENRY POWERS,

---

## HARRINGTON v. WRIGHT AND SANDERS.

### *Promissory Note. Evidence. Sureties.*

Plaintiff held a note whereon N. was principal, and defendants and others were sureties. Plaintiff and N. procured defendant W. to sign another note, agreeing at the time that it should not be used except to take up the former note, nor unless all the signers of the former note signed it. W. was induced by this agreement to sign said last mentioned note, which plaintiff well knew, and also knew that the note was to be presented to defendant S., by N., the principal thereon, with W's name upon it as an inducement for him to sign, and that S. was thereby induced to sign; and plaintiff took the note, knowing S. had been so induced, and advanced money thereon to N. instead of taking it in payment of the former note as agreed. *Held*, that defendants' relations as sureties, and said agreement, might be shown by parol, and constituted a defence to the note.

ASSUMPSIT upon a joint and several promissory note for $800, dated April 23, 1869, payable to plaintiff or bearer in one year from date, with interest, and signed by C. Noyes, G. H. Noyes, and defendants. Plea, the general issue, and notice. Trial by jury, December Term, 1875, WHEELER, J., presiding.

Plaintiff gave said note in evidence, and rested. Defendants then offered parol evidence, to which plaintiff objected, but which the court admitted, tending to show that they signed said note as sureties for C. Noyes, and received none of the consideration thereof; that about a year before said note was given, C. Noyes as principal, G. H. Noyes, one Robinson, and the defendants as sureties, made a promissory note for the sum of $800, payable to plaintiff or bearer in one year from date, which was taken by plaintiff knowing that defendants and Robinson were sureties thereon, and the consideration thereof paid by him to said C. Noyes; that at the time defendant Wright signed the note in suit, he was called by the plaintiff into the meat market of said Noyes, in presence of said Noyes, and that plaintiff and Noyes then requested him to sign said note, which had already been signed by the two Noyeses, and to induce him to sign it, told him that it was being given to take up the note of $800 given the year previous, and that it should not be used unless all the signers upon the other note signed this one; that relying thereon, he signed the note, and Noyes took it with Wright's signature upon it, to procure the signatures of the others, and that when he procured the signature of the defendant Sanders, he represented to him that the note was to take up the prior note of $800, and that it should not be used unless he procured all the signers on the prior note to sign it; that after Sanders had signed it, without presenting it to Robinson, Noyes took it to plaintiff, and told him what he had told Sanders; that plaintiff said he thought it was good enough as it was, and took it and let said Noyes have $704 in money, and indorsed $48 as paid on the first note, and paid one dollar for a stamp for this note, which was the whole consideration therefor. That plaintiff had kept the first note and brought suit against the defendants upon it.

It did not appear that plaintiff knew that any representations were to be made to the defendant Sanders to procure his signature

to said note, further than that it was to be presented to him with the signatures then already upon it.    To the decision of the court admitting this evidence, plaintiff excepted.

Plaintiff then introduced evidence tending to prove that Noyes, a short time previous to the date of the note in suit, applied to him for a loan of money ; that plaintiff told him if he would get as good a note as he then held against him, he would let him have $800 more ; that he had no conversation at the meat market with defendants Wright and Noyes, nor anywhere else, and never saw said note, or knew anything about it, until Noyes brought it to him and wanted him to cash it ; that he then examined and accepted it, and paid Noyes the sum of $800 therefor.    Plaintiff also introduced evidence tending to prove that Sanders was a frequent signer and indorser for Noyes, and had taken a mortgage of Noyes to secure him therefor.

The court charged the jury, among other things, that if Wright was induced to sign the note in suit by an agreement that it should not be used except to take up the other note, or by an agreement that it should not be used unless all the signers to the other note signed it, and the plaintiff knew it, and knew that it was to be presented to Sanders for his signature with Wright's name on it, as an inducement for him to sign it, and that did induce him to sign it, and plaintiff took it, knowing that Sanders had been so induced, he was not entitled to recover against either Wright or Sanders.    To this part of the charge the plaintiff excepted.    Verdict for the defendants.

*T. Sibley*, for plaintiff.

This action is brought by the payee against two of the makers and principals of said note, and as between them, the note excludes all parol evidence.    It was made for the very purpose of being the proof, the sole and exclusive proof, of the contract.    *Adams* v. *Flanagan*, 36 Vt. 400 ;  *Claremont Bank* v. *Wood*, 10 Vt. 582 ;  *Bradley* v. *Bently*, 8 Vt. 243 :  *Farmers &amp; Mechanics' Bank* v. *Rathbone*, 26 Vt. 19 ; 2 Am. Lead. Cas. 434, *et seq. ; Murry* v. *Judah*, 6 Cow. 484 ;  *Spriggs* v. *Bank of Mt. Pleasant*, 14 Pet. 201 ;  *Fentum* v. *Pocock*, 5 Taunt. 192 ;  *Bull* v. *Allen*, 19 Conn. 101.

The court erred in admitting this evidence and allowing defendants to defend upon the equitable grounds of sureties; and in allowing defendants by parol evidence to contradict, contravene, and overcome the just and legal obligations they voluntarily assumed in signing said note, and which were apparent on the face of the instrument. *Brown* v. *Hitchcock*, 28 Vt. 452; *Farnum* v. *Ingram et al.* 5 Vt. 514; *Quin* v. *Hard*, 43 Vt. 375; *Bull* v. *Allen, supra;* 1 Am. Lead. Cas., *supra.*

The court erred in admitting the conversation between Noyes and Sanders, plaintiff not being present, and having no knowledge that the same or anything was to be said to him, to induce him to sign said note.

The court also erred in the charge as to the liability of Sanders. Also in that part of the charge as to the legal effect of the agreement that the note should not be used unless all the signers to the other note signed it. *Ruth* v. *Goodwin*, 31 Vt. 268; *Norton* v. *Damon*, 31 Vt. 407.

———— ————, for defendants.

It was competent for defendants to show by parol that they were sureties on the note. *Bank of St. Albans* v. *Smith*, 30 Vt. 151. The case shows that the defendants were simply sureties on the note, and that plaintiff knew it. Under such circumstances, the decisions are uniform that any fraud or misrepresentation knowingly made or practiced by the payee, to induce the sureties to sign the instrument, and which did so induce them, will defeat a right of recovery against them by the payee or other holders who took the same with knowledge of the fraud. *Stone* v. *Compton*, 5 Bing. N. C. 142; *Pidcock* v. *Bishop*, 3 B. & C. 605; *Weed* v. *Bentley*, 6 Hill, 56; *Lancaster Bank* v. *Albright*, 9 Harris, 228; 2 Am. Lead. Cas. 228, 431.

The opinion of the court was delivered by

ROYCE, J. In *Bank of St. Albans* v. *Smith*, 30 Vt. 148, it is said that "under the uniform course of decisions in this state, it was competent to show by parol that the defendant was but a surety on this note; and if this be known to the holder of the

paper, he stands on the same ground he would have done if the defendant had affixed to his name the word surety." All the cases cited upon this point show that in a suit in the name of the payee of the note against one or all of the signers, it is competent to show the relation that existed between the signers at the time the note was executed. If the relation of any of the signers is shown to be that of a surety, and this fact is known to the holder or payee at the time he receives the note, such signer is entitled to avail himself of all the privileges and rights that pertain to his character as surety, as against the holder or payee. The court made a proper application of this rule in admitting evidence as to what transpired at the time of the execution of the note, as affecting the liability of the defendants. To justify the verdict which was returned by the jury, they must have found that it was agreed at the time the defendant Wright signed the note, that it should not be used except to take up the other note, nor unless all the signers to the other note signed this; that he was induced to sign the note by this agreement, and that the plaintiff knew it, and knew that it was to be presented to the defendant Sanders with Wright's name upon it, as an inducement for him to sign it, and that that did induce him to sign it, and that the plaintiff took it knowing that Sanders had been so induced. These facts being found, it must be conceded that the note, as far as the defendants are concerned, was perverted to an use contrary to the agreement made at the time of its execution. The execution of the note, and the agreement as to the use to be made of it, were contemporaneous acts, and were one transaction. If the plaintiff is to be aided in the perversion of the note by enforcing its payment, he is at the same time to be justified in the violation of the agreement made by him that the note should only be used for a purpose named, and in a contingency that' was provided for. We are not acquainted with any principle of law or equity that can be invoked to solve that problem in favor of the claim made by the plaintiff, without a palpable disregard of the ancient maxim that "no man shall take advantage of his own wrong." None of the authorities cited by the plaintiff will be found upon examination to be in conflict with the view that was taken by the court. The

question, how far and under what circumstances a surety could avail himself of an agreement between himself and the principal at the time he signed the note, in defence of a suit brought against him upon the note, has been frequently before this court. It was held in *Passumpsic Bank* v. *Goss & Page,* 31 Vt. 315, that where there was an agreement between the principal and surety that the principal should not use the note unless the principal obtained another surety on the note, and the principal, in violation of that agreement, procured the note to be discounted by the plaintiff, that the agreement constituted no defence to the surety who signed the note, *unless the officers of the bank were aware of the agreement.* The same doctrine is held in *Dixon* v. *Dixon et al.,* in the same volume, 450. These cases were put upon the ground that the parties holding the notes were innocent holders, and that where, through the fraudulent act of a third person, one of two innocent parties must suffer, he who has clothed such third person with the means of perpetrating the fraud, must bear the loss. But where the party taking the paper has notice of the agreement at the time of taking it, he is not an innocent holder, and this rule has no application. Hence, in *Farmers & Mechanics' Bank* v. *Hathaway,* 36 Vt. 539, the distinction above noted is plainly made. Upon a review of all the authorities to which our attention has been called, we hold upon principle and authority, that the rulings of the court upon all the matters excepted to, were clearly correct.

Judgment affirmed.